CRUZ v STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

Docket No. 206120. Submitted September 7, 1999, at Grand Rapids. Decided May 16, 2000, at 9:05 A.M. Leave to appeal sought.

Peter Cruz, Jr., brought an action in the Kent Circuit Court against State Farm Mutual Automobile Insurance Company, his automobile insurer, seeking first-party personal protection insurance benefits and uninsured motorist benefits. The court, Paul J. Sullivan, J., granted summary disposition for the defendant, ruling the plaintiff ineligible for benefits on the basis of his noncompliance with an examination under oath (EUO) provision in the policy requiring an insured making a claim to answer questions under oath by anyone named by the insurer and to sign copies of the answers. The plaintiff appealed.

The Court of Appeals *held*:

1. The trial court erred in granting summary disposition for the defendant with respect to personal protection insurance benefits. Personal protection insurance benefits are mandated and governed by the no-fault act. An EUO is not part of the duties imposed by the act on an insured in terms of cooperating with an insurer with respect to a claim for personal protection insurance benefits. An EUO provision concerning personal protection insurance benefits is contrary to the no-fault act and is unenforceable.

2. The trial court did not err in granting summary disposition for the defendant with respect to uninsured motorist benefits. Uninsured motorist coverage is not required by the no-fault act and is therefore subject to the provisions of the given insurance policy providing such coverage. The EUO provision in this case, as it relates to uninsured motorist benefits, is enforceable inasmuch as it is clear, unambiguous, and not in contravention of public policy. The plaintiff's noncompliance with the EUO provision merited dismissal without prejudice of the count seeking uninsured motorist benefits, as opposed to dismissal with prejudice, given that the plaintiff's noncompliance with the EUO provision was not wilful, i.e., it was not part of a deliberate effort to withhold material information or part of a pattern of noncooperation with the insurer.

Affirmed in part and reversed in part.

1. Insurance — No-Fault — Personal Protection Insurance — Examinations Under Oath.

The no-fault act, which mandates and governs personal protection insurance benefits, does not permit an insurer to require in an insurance policy that the insured submit to an examination under oath when making a claim for personal protection insurance benefits (MCL 500.3105; MSA 24.13105).

2. Insurance — No-Fault — Uninsured Motorist Coverage — Examinations Under Oath.

The no-fault act does not mandate uninsured motorist coverage; such coverage is subject to the terms of a given insurance policy; a policy provision requiring an insured to submit to an examination under oath when making a claim for uninsured motorist benefits is enforceable where the provision is clear, unambiguous, and not in contravention of public policy.

*R. Kevin Thieme,* for the plaintiff.

*Tolley VandenBosch Walton Korolewicz & Brengle, P.C.* (by *Lawrence Korolewicz* and *Mark J. Colon*), for the defendant.

Before: McDonald, P.J., and Neff and Smolenski, JJ.

McDonald, P.J. Plaintiff appeals as of right from the trial court's order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10). We affirm in part and reverse in part.

On October 26, 1994, plaintiff was involved in an automobile accident. Plaintiff alleges that he was seriously injured when an uninsured motorist negligently struck his automobile. At the time of the accident, plaintiff was insured by defendant. Plaintiff's policy included uninsured motorist coverage and the statutorily mandated first-party coverage. The policy also includes the following examination under oath (EUO) provision, contained in an amendatory endorsement to the policy:

2. REPORTING A CLAIM—INSURED'S DUTIES

a. The following provision is added to item 5:

The person making the claim also shall answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign copies of the answers.

Plaintiff made a claim with defendant seeking both first-party no-fault benefits and uninsured motorist benefits. Pursuant to the above policy provision, defendant initially requested that plaintiff make "a recorded statement" and later, through its attorney, repeatedly asked plaintiff to submit to an EUO in this matter. Defendant claimed that it needed to obtain the EUO to investigate plaintiff's claim. Plaintiff had been involved in an earlier automobile accident in December 1992, which resulted in a brain injury, and defendant claimed it needed to discuss the circumstances of both automobile accidents and plaintiff's current medical status. Plaintiff refused to submit to the EUO, arguing that the Michigan no-fault statute did not require him to do so. Ultimately, defendant denied plaintiff's claims for uninsured motorist benefits, in November 1995, and first-party no-fault benefits, in December 1995, because plaintiff had refused to answer questions under oath.

After defendant denied plaintiff's claim for uninsured motorist benefits, plaintiff demanded arbitration pursuant to provisions in the policy providing for arbitration where the insured and defendant do not agree on whether the insured is "legally entitled to collect damages from the owner or driver of the uninsured motor vehicle." Defendant responded that plaintiff was not entitled to arbitration because he had breached the insurance contract by failing to submit to an EUO. However, plaintiff unilaterally proceeded to

arbitration, appointing his arbitrator and scheduling an arbitration hearing.[1] Defendant refused to participate in the arbitration process and did not select its own arbitrator. In light of defendant's failure to select an arbitrator, plaintiff's arbitrator selected a "neutral arbitrator" and an arbitration hearing was held. The two arbitrators found that plaintiff had not breached his policy, that the uninsured motorist was at fault in the accident, and that plaintiff was entitled to $150,000. Plaintiff contended this decision was binding on defendant because the insurance policy provides that "[t]he written decision of any two arbitrators shall be binding on each party." When defendant did not respond to plaintiff's request for payment, he filed the instant action.

Plaintiff's complaint had two counts. Count one sought to confirm the arbitration award and count two sought first-party no-fault benefits. Plaintiff and defendant filed cross-motions for summary disposition. The trial court granted defendant's motion in part, dismissing count one of plaintiff's complaint and ordering plaintiff to submit to an EUO as a condition precedent to proceeding with his claim set forth in count two. Plaintiff then filed an application for leave to appeal this interlocutory order of the trial court in this Court.

---

[1] The policy provides:

> Each party shall select a competent and impartial arbitrator. These two shall select a third one. If unable to agree on the third one within 30 days either party may request a judge of a court of record in the county in which the arbitration is pending to select a third one. The written decision of any two arbitrators shall be binding on each party.

While the appeal in this Court was pending, defendant scheduled an EUO, which plaintiff refused to attend. Defendant then moved for summary disposition in the trial court, and the trial court granted defendant's motion, dismissing count two of plaintiff's complaint. Plaintiff then appealed as of right to this Court. His earlier application for leave to appeal the trial court's interlocutory order was denied. *Cruz v State Farm Mut Auto Ins Co*, unpublished order of the Court of Appeals, issued October 1, 1997.

Plaintiff first argues the trial court erred in granting summary disposition to defendant on count two of his complaint, seeking first-party no-fault benefits, on the basis of plaintiff's noncompliance with the EUO policy provision. Plaintiff argues the EUO provision is contrary to the no-fault insurance act. This is an issue of first impression in Michigan.

This Court reviews a motion for summary disposition de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). We also review issues of statutory interpretation de novo. *Haworth, Inc v Wickes Mfg Co*, 210 Mich App 222, 227; 532 NW2d 903 (1995).

A motion pursuant to MCR 2.116(C)(10) tests the factual support for a claim. *Spiek, supra* at 337. The motion may be granted pursuant to MCR 2.116(C)(10) when, except with respect to damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Michigan Mut Ins Co v Dowell*, 204 Mich App 81, 85; 514 NW2d 185 (1994). The trial court must consider the documentary evidence submitted by the parties, and giving the benefit of any reasonable doubt to the nonmoving party, the trial court must determine whether a

record might be developed that would leave open an issue on which reasonable minds might differ. *Id.*

The purpose of Michigan's no-fault insurance system is to provide victims of automobile-related accidents with assured, adequate, and prompt payment for economic losses. *Shavers v Attorney General,* 402 Mich 554, 578-579; 267 NW2d 72 (1978); *Miller v Farm Bureau Mut Ins Co,* 218 Mich App 221, 225-226; 553 NW2d 371 (1996). The no-fault act mandates that insurers "pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." MCL 500.3105(1); MSA 24.13105(1); *Miller, supra* at 226. Because personal protection insurance benefits are mandated by the no-fault statute, the statute is the "rule-book" for deciding the issues involved in questions regarding awarding those benefits. *Rohlman v Hawkeye-Security Ins Co,* 442 Mich 520, 524-525; 502 NW2d 310 (1993); *Mate v Wolverine Mut Ins Co,* 233 Mich App 14, 19; 592 NW2d 379 (1998).

We recognize that the no-fault act does not specifically preclude or permit an EUO provision. However, we agree with plaintiff that the no-fault act sets forth the insured's duties of cooperation, and because it does not provide for an EUO provision, the provision is contrary to the no-fault act.

First, MCL 500.3145; MSA 21.13145 provides that the insured cannot bring suit for personal protection insurance benefits later than one year after the date of the accident giving rise to the injury, unless written notice has been given to the insurer within the year after the accident or if the insurer had previously made a payment of personal protection insurance benefits for the injury.

In addition to the notice of injury provision, the no-fault act provides that the insured will submit to a mental or physical examination if the mental or physical condition of the person is material to a claim that has been made, or may be made, for personal protection insurance benefits. MCL 500.3151; MSA 24.13151. This section of the no-fault act also allows a personal protection insurer to "include reasonable provisions in a personal protection insurance policy for mental and physical examination of persons claiming personal protection insurance benefits." MCL 500.3151; MSA 24.13151.

The no-fault act also provides insurers with a means for gathering information regarding a claimant's earnings and medical history, condition, and treatment. MCL 500.3158(1); MSA 24.13158(1) provides that, upon request, an employer of the injured person must furnish the insurer with information pertaining to the injured person's earnings since the injury and for a reasonable time before the injury. MCL 500.3158(2); MSA 24.13158(2) provides that upon request of the insurer, a written report of the history, condition, treatment, and dates and costs of treatment of the injured person must be furnished, and that the records regarding the injured person's history, condition, treatment, and dates and costs of treatment must be produced and permitted to be inspected and copied.

Finally, the no-fault act includes a discovery provision. MCL 500.3159; MSA 24.13159 allows a court to enter, upon good cause shown, an order for discovery in a dispute "regarding the insurer's right to discovery of facts about an injured person's earnings or about

his history, condition, treatment and dates and costs of treatment."

Although defendant recognizes these provisions of the no-fault act, it contends that the statute does not provide a means for it to determine whether plaintiff's injuries were accidental. We agree with defendant that pursuant to MCL 500.3105; MSA 24.13105, it is only obligated to pay benefits for accidental injuries. MCL 500.3105(4); MSA 24.13105(4) defines bodily injury as accidental "unless suffered intentionally by the injured person or caused intentionally by the claimant." In order to find an intentional injury, plaintiff must have intended both the act and the injury. *Miller, supra* at 226; *Schultz v Auto-Owners Ins Co*, 212 Mich App 199, 201; 536 NW2d 784 (1995).

We disagree with defendant that an EUO provision is necessary to determine whether the injuries are accidental. In both *Miller, supra* at 224, and *Schultz, supra* at 200, the insurers denied the plaintiffs' claims upon concluding the injuries were not accidental. Nothing precludes defendant from doing the same in this case. We find the no-fault act provides defendant with ample means of gathering the information necessary for it to determine whether plaintiff is entitled to no-fault benefits. If the Legislature wants to extend the tools available to insurers by allowing an EUO provision, it is free to do so, but it is not within our province to do so. The trial court erred in granting summary disposition in favor of defendant on count two of plaintiff's complaint.

In reaching our holding today, we reject defendant's argument that the fact that the EUO provision was filed with the Michigan Department of Insurance and approved by the Commissioner of Insurance

shows that the provision is consistent with the no-fault act. In Michigan, the Commissioner of Insurance may reject forms that are in conflict with the statute. *Franklin Life Ins Co v Comm'r of Ins*, 159 Mich 636; 124 NW 522 (1910). However, the approval of a form by the Commissioner of Insurance is not conclusive proof that the endorsement complies with the statute. Instead, the approval of the Commissioner of Insurance is only somewhat persuasive that the policy complies with the statute. *Drogula v Federal Life Ins Co*, 248 Mich 645, 648; 227 NW 692 (1929); *Progressive Mut Ins Co v Taylor*, 35 Mich App 633, 643; 193 NW2d 54 (1971). Moreover, we have examined the cases from other jurisdictions defendant cites and that have upheld EUO provisions, but we decline to follow these cases.

In light of our holding that the EUO provision is contrary to the no-fault act, it is not necessary for us to address plaintiff's arguments that he substantially complied with the EUO provision and that defendant must demonstrate that it suffered actual prejudice from plaintiff's noncooperation.

Next, plaintiff argues the trial court erred in granting summary disposition in favor of defendant on count one of his complaint, seeking uninsured motorist benefits. Again, our standard of review is de novo. *Spiek, supra* at 337.

Plaintiff first argues that when uninsured motorist benefits are afforded by the insurance policy, the insurer should be limited by the discovery provisions in the no-fault act. We disagree. Uninsured motorist benefits are not statutorily required by the no-fault act, and the language of the insurance policy controls. *Berry v State Farm Mut Automobile Ins Co*, 219 Mich

340, 346; 556 NW2d 207 (1996); *Auto-Owners Ins Co v Harvey*, 219 Mich App 466, 472; 556 NW2d 517 (1996). Accordingly, the EUO provision is enforceable in the context of plaintiff's claim for uninsured motorist benefits.

Plaintiff argues he substantially complied with the EUO provision by signing requested medical authorizations, providing requested wage and salary authorizations, presenting himself for independent medical examination, and agreeing to give a statement limited to "non-medical causation questions." While defendant does not dispute that plaintiff agreed to give a statement, it emphasizes that plaintiff in fact never gave any statement. Accordingly, we disagree with plaintiff that he substantially complied with the EUO provision. See *Gordon v St Paul Fire & Marine Ins Co*, 197 Mich 226, 229-231; 163 NW 956 (1917); *Gibson v Group Ins Co of Michigan*, 142 Mich App 271, 275-276; 369 NW2d 484 (1985).

This Court has held, in the context of a homeowner's insurance policy, that the remedy for failing to comply with a requirement to submit to an EUO is dismissal of the insured's action. *Thomson v State Farm Ins Co*, 232 Mich App 38, 45; 592 NW2d 82 (1998); *Yeo v State Farm Ins Co*, 219 Mich App 254, 257; 555 NW2d 893 (1996). We see no reason to distinguish between a valid EUO in a homeowner's insurance policy and a valid EUO in a policy providing uninsured motorist benefits. An insurance policy is much the same as any other contract; it is an agreement between the parties. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566; 489 NW2d 431 (1992). Generally an insurance policy provision is valid as long as it is "clear, unambiguous and not in contravention of

public policy." *Auto-Owners Ins v Harrington*, 455 Mich 377, 382; 565 NW2d 839 (1997), quoting *Raska v Farm Bureau Mut Ins Co of Michigan*, 412 Mich 355, 361-362; 314 NW2d 440 (1982). Because the no-fault statute does not require uninsured motorist benefits, there is no public policy against enforcing the EUO provision in this context, and we must honor the intent of the parties' contract.

However, there is a question whether the dismissal should be with or without prejudice. This was the issue in *Yeo, supra* at 258. In *Yeo, supra* at 258-259, this Court held that as a general rule, dismissal on the basis of failure to comply with an EUO provision should be without prejudice. In *Yeo, supra* at 259, this Court found no evidence of wilful noncompliance and, therefore, found it unnecessary to address the effect of wilful noncompliance on the general rule. In *Thomson, supra* at 46, this Court recognized that wilful noncompliance "involves something more than merely knowingly failing to appear for an EUO." This Court then went on to explain:

> "[W]ilful noncompliance" in the context at hand refers to a failure or refusal to submit to an EUO or otherwise cooperate with an insurer in regard to contractual provisions allowing an insurer to investigate a claim that is part of a *deliberate* effort to withhold material information or a *pattern of noncooperation* with the insurer. [*Id.* at 50-51 (emphasis in original).]

The burden is on plaintiff to demonstrate that his refusal to submit to an EUO was not part of a deliberate effort to withhold material information or a pattern of noncooperation with the insurer. *Id.* at 51. We find plaintiff has met his burden in this case. The only way plaintiff refused to cooperate in this case was by

failing to submit to the EUO. Accordingly, plaintiff's claim should have been dismissed without prejudice in accordance with the general rule. *Yeo, supra* at 259.

Finally, plaintiff argues that in order for defendant to deny benefits on the basis of plaintiff's noncooperation, it must show actual prejudice. Plaintiff cites *Allen v Cheatum*, 351 Mich 585; 88 NW2d 306 (1958), in support of his argument. Plaintiff's reliance on *Allen* is misplaced. There the insurer was seeking to defeat the claim of a *third party*, not its insured, in a garnishment action on the basis of noncooperation by its insured.[2]

Affirmed in part and reversed in part.

---

[2] We also note that in *Coburn v Fox*, 425 Mich 300, 309-310; 389 NW2d 424 (1986), the Michigan Supreme Court recognized that this rule was abrogated by the passage of the no-fault act.